# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

**FILED**

JUN 0 5 2024

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

1 PAULETTE TAYLOR, INDIVIDUAL, MOTHER
and NEXT FRIEND of G.G, III, A MINOR

**Jury Trial Demanded**

                              Plaintiff,

V.

24 CV - 2 6 6 GKF - JFJ

CIVIL CASE NO._____

## COMPLIANT

[1] INDEPENDENT SCHOOL DISTRICT NO.1
   OF TULSA COUNTY, OKLAHOMA aka
   TULSA PUBLIC SCHOOL aka "TPS"

[2] DR. MELISSA WOOLRIDGE, principal, Washington HS aka "BTW"
   in her official, individual and personal capacity

[3] Chennai Arterberry, Washington HS, aka "BTW" Dean of Students
   in her official, individual and personal capacity

[4] EVA VINDAS, TITLE IX COORDINATOR
   in her official, individual and personal capacity

[5] STEPHANIE ANDREWS, Executive Director of STUDENT and FAMILY Support
   in her official, individaul and personal capacity

[6] DR. OLIVER WALLACE, Director of STUDENT and FAMILY ADVOCACY
   in his official, individual and personal capacity

[7] Michelle Sigfield, District Lead of School & Workplace INVESTIGATIONS
   In her official, individual and personal capacity

[8] JANA BURK, TULSA PUBLIC SCHOOL, GENERAL COUNSEL
   in her official, individual, and personal capacity

                              Defendants.

1

## COMPLAINT

1.      COMES NOW the Plaintiff, Paulette Taylor, INDIVIDUALLY, as MOTHER and NEXT FRIEND of G.G.III, a MINOR ( hereinafter referred to as "Plaintiffs") brings this Complaint against Defendant, Tulsa Public School, Dr. Melissa Woolridge, Principal, and Chennai Arterberry, Dean of Students of Washington HS aka "BTW", Eva Vindas, TITLE IX Coordinator, Stephanie Andrews, Executive Director of Student and Family Support, Michelle Sigfield,District Lead of School & Workplace Investigations, Dr. Oliver Wallace, Director of Student and Family Advocacy and Jana Burk, General Counsel (hereinafter referred to as "Defendants" ), and allege as follows:

## A. PARTIES

2. Plaintiff, Paulette Taylor Obo G.G., III, a Minor, resides in Tulsa County, State of Oklahoma.

3. Defendant, Independent School District No. 1 of Tulsa County, Oklahoma commonly known as Tulsa Public Schools  ("the School District") ("TPS") a public body corporate.

4. Dr. Melissa Woolrige, an active Principal of Washington HS aka "BTW", is on information and belief a resident of Tulsa, Tulsa County, Oklahoma.

5. Chennai Arterberry, an active Dean of students, Washington HS, aka "BTW", is on Information and belief a resident of Tulsa, Tulsa County, Oklahoma

6.  Eva Vindas, Title IX Coordinator, an active employee, is on information and belief a resident of Tulsa County, Oklahoma.

7. Stephanie Andrews, an active Executive director of student and family support,

2

is on information and belief a resident of Tulsa County, Oklahoma.

8.  Dr. Oliver Wallace, an active Director of student and family advocacy, is on

    information and belief a resident of Tulsa, Tulsa County, Oklahoma.

9.  Michelle Sigfield, an active District Lead of School & Workplace Investigations

    and a newly, acting Title IX and Human Rights Coordinator, is on information

    and belief a resident of Tulsa, Tulsa County, Oklahoma; and

10.  Jana Burk, an active Education Law Attorney, TPS General Counsel, is on

    information and belief a resident of Tulsa, Tulsa County, Oklahoma

## B. JURISDICTION AND VENUE

11. This Northern District Court of Oklahoma has jurisdiction over this action pursuant

    to 28 U.S.C. §§ 1331 and 1343(a) (3) and (4), as this action arises under the laws of

    the United States.

12.  All actions were committed by the parties located in Tulsa County, State of

    Oklahoma Pursuant to 28 U.S.C. § 116(a), Tulsa County is within federal judicial

    served by the United States District Court of Northern District of Oklahoma.

13.  This Court has subject matter jurisdiction over the claims asserted by Plaintiff and

    personal jurisdiction over the parties to this action and "venue" is proper.

14.  **28 U.S.C. § 1367** grants federal district courts the authority to hear both federal

    and state law claims in the same lawsuit.

15.  Title IX is a federal law, and the violations of Title IX can be filed in this Federal

    Court due to claims involved are Federal rights violations.

16.  Independent School District No. 1 of Tulsa County, Oklahoma (Tulsa Public

School) is a public body corporate and is the only entity with a legal existence

capable of suing and being sued. OKLA. STAT. tit. 70, §§5-105 and 5-106.

17.  TPS receives federal funding, therefore is subject to Title IX compliance rules.

18.  This Court has the authority to enter a declaratory judgment and to provide

injunctive relief pursuant to Federal Rules of Civil Procedure 57 and 65, and 28

U.S.C. §§ 2201 and 2202.

19.  This civil action was filed within the statutory time limits under the Oklahoma

Governmental Tort Claims Act.51 O.S.§ 156. NO RESPONSE was received.

## C.  NATURE OF CASE

20.  This is a civil rights action seeking legal clarification, injunctive relief, and damages

for the Defendant's violation of false, fictitious, and fraudulent claims of the Plaintiff

violating district Policy 318: Title IX Sexual Harassment as known as  Title IX  of

the Education Amendments of 1972, ("Title IX"), 20 U.S.C.§§ 1681et seq.,  to

Plaintiff's report to the Tulsa Police fearful for his health and safety due to Tulsa

Public  School, Washington HS abject failure to adhere to compliance standards

consistent with District Policy 2119 "Student Bullying Prevention and Intervention,"

and Policy 3316-R Athletics despite multiple complaints. As a result, Defendant took

adverse action against Plaintiff, on an emergency basis, abruptly suspended Plaintiff

for 150 days (a year)as a purported threat,  infringed Plaintiff's due process rights,

aka "BTW's" abject failure and inconsistency in adhering to school policies, federal,

state and local laws. In doing so, Defendant 2, Dr. Woolridge, principal, consciously violated the Plaintiff's "Due Process" rights outlined in the Title IX Grievance Procedures pursuant to Title IX Regulations adopted by the U.S Department of Education(USDOE), effective August 14, 2020. In addition to violating his First, Fifth Sixth and Fourteenth Amendments of the U.S.Constitution (see 42 U.S.C. §1983) and title 2 §7 of the Oklahoma Constitution. As a result of the Defendants unreasonable behavior and deliberate malicious prosecution the minor, Plaintiff Transcript has been tarnished, continues to suffer being denied of his right to attend school pursuant Oklahoma Education Act,70 O.S.§ 10-105 and prohibited from exercising his right under State Transfer Law, SB 783 effective January 1, 2022. In addition to HB 1934. Once again, Defendant took additional adverse actions after Plaintiff made multiple complaints throughout the district and beyond seeking just and fair treatment. Again,to silence Plaintiff, Defendant made an additional fraudulent claim stating that Plaintiff violated District Policy 315:Title IX Discriminatory Harassment, yet again, violating Plaintiff's due process along with holding Plaintiff hostage in the TPS school district, forcing him to attend Traice's Academy Alternative school against his will, and banning his return to Washington HS. In the same way, The Defendant is preventing the Plaintiff from enrolling in a different school district and deliberately, depriving the Plaintiff of his right to a quality education and equal opportunity in a learning environment that best fits his needs to aspire, achieve, participate in, maximize ability, thereby, improving and increasing his outcomes to

indubitably contribute to society. This action also seeks damages for unlawful

retaliation, defamation, wrongful suspension, negligence per se, due process

violations, and breaches of constitutional rights.

21. *Cause of Action:  Negligence:  §21-93 and §25-6 and  §23-13*
   *Oklahoma Statues § 70-24-100.4 School Safety and Bullying Prevention Act*

   *I allege the following:*

   1. The Plaintiff, a student of Tulsa Public School, Washington HS aka "BTW"

   during the 22-23 school year. "But for" the failure of Head Football Coach Brown to

   exercise due care, by acting contrary to TPS district  Policy 3316-R: "Athletics"and

   Policy 2119: "Student Bullying  Prevention and Intervention". ( per se unreasonable)

   The  Plaintiff would not have suffered grievous misconduct in the form of "emotional,

   social, physical and sexual bullying" by a select group of football players continually

   beginning on and around June 8, 2022 through August 30, 2022 at "BTW" Field

   house. His failure to act in accordance to district policies in the face of multiple

   complaints created a very uncomfortable  and unsafe learning environment. But for

   his breach of duty of care, acting contrary to district policies ( per se unreasonable)

   The Plaintiff would not have suffered a physical assault and sustained a bloody

   bodily injury on August 30, 2022. by the hands of a fellow student athelete T. Bethel

   on the  grounds of  Washington HS. This injury could have been prevented if the

   head coach Brown acted in compliance with district policies and safety protocols

    being that the minor Plaintiff  was meant to be protected by the district established

6

Policies.  On August 30, 2022 around 3:45pm the Plaintiffs reported the bodily

injury to Head Coach Brown, yet again he refused to be govern by district Policy

2119 & 3316-R. August 31, 2022   Plaintiffs, again reported a  physical assault,

with a bodily injury sustained on "BTW's" campus to the head coach.Undeterred,

head coach still chose to act contrary to district Policy 2119 and 3316-R.


22.  *Cause of Action: Negligence  §21-93 and §25-6 and  §23-13*
    *Oklahoma Statues § 70-24-100.4 School Safety and Bullying Prevention Act*
    *I allege the following:*

> 1.  On September 1, 2022, Plaintiff contacted Defendant 6,

Dr. Wallace regarding the ongoing unaddressed bullying and physical assault.

Defendant 6, Dr. Wallace, an indifferent lead school official, failed to exercise

due care as well, by not  reviewing and resolving parent concerns with Defendant 2,

Dr. Woolridge, principal  but rather asking, "what do you want me to do?" thereby,

doing nothing, causing the minor, Plaintiff to be left at risk, defenseless and subject

to more harm of  victimization, and  in distress, seeking  protection for himself due to

Defendant 6, Dr. Wallace dereliction of duty, acting contrary to district policies

( per se unreasonable) intentionally failing to advocate  for the victim.


23. *Cause of Action: Negligence §21-93 and §25-6 and  §23-13*
*Oklahoma Statues § 70-24-100.4 School Safety and Bullying Prevention Act*

> *I allege the following:*

> 1.    In utter shock to Defendant 6, Dr. Wallace's  response, Plaintiff

turned to assistant Deana  Hendrix, with empathy,  instructed Plaintiff to call

TIPS*line* for immediate  assistance.  Plaintiff made reports of bullying,  physical

assault,  personal injury etc.. adding  Defendant 6, Dr. Wallace's lack of empathy

and failure to address the social, emotional, health, and safety needs of  Plaintiff

when phoned to the TIPS*line*. In addition to emailing  Defendant 2, Dr. Woolridge,

 principal regarding the physical  assault and personal injury sustained on "BTW"

grounds August 30, 2022. as a result of the head   coach's failure to exercise

reasonable care to prevent and protect the Plaintiff from continued harm.  After

Plaintiff contacted  TIPS*line* and Defendant 2, Dr. Woolridge received email she

elected Defendant 3, Dean Arterberry, on Thursday @ 9:43am on September 1,

2022  to immediately complete  a bullying investigation. On September 2,2022,

mid-morning, Defendant 3, Dean  Arterberry phoned and left a voicemail on the

 Plaintiff's phone stating investigation complete her and all allegations was found to

be true and accurate.However, not stating what steps will be taken to prevent the

bullying in the future, offered no counseling for Plaintiff at the school as deemed

necessary."But for" Defendant 3, Dean Arterberry's 's failure to exercise reasonable

care during her investigation the Plaintiff would not have continued to be  harassed

by about seven football players ganging up on him in the cafeteria during "*C*"

lunch around 12:25-12:50p on  September 2, 2022 asking him why did he rat on

Them. The continued harassment is direct result Defendant 3, Dean Arterberry

 acting  contrary to district policies  (Per se unreasonable) during her bullying

Investigation,she  failed to demonstrate her Bullying Awareness/ Intervention

required training skills along with sensitivity to the Interpersonal Dynamics of bullying

 behavior caused the minor, Plaintiff to be unprotected from reprisal,  retaliation and

false accusations. "But for" Defendant 3, Dean Arterberry's lack of  reasonable care,

lack of candor,  trained or untrained, she  created a very hostile, unwelcoming, and

unsafe learning environment due to her reckless disregard to keep and protect the

 Plaintiff's identity and complaint confidential thus causing the Plaintiff  to instantly

suffer the repercussions of  exercising his protected right (speech) right  to report acts

of  bullying in confidence.  As a result, Defendant 3, Dean Arterberry's  egregious

failure to act in compliance to district policies caused Plaintiff to not only suffer being

mocked, but experience  more verbal harassment, being endlessly called a snitch, a

bit.. and a trader, along with threats of serious  premeditated bodily harm as a result

of Defendant 3,Dean  Arterberry's  reckless disregard for the Plaintiff's health and

safety. Clearly, the  Plaintiff would not have been made to feel rejected, unwelcomed,

and excluded as a target to repay for exercising his protected rights to report patterns

of harassment  assumed in  confidence and the school dereliction of duty to properly

and promptly  intervene. "But for" Defendant 3, Dean Arterberry's failure to act in

compliance with district  bullying investigations and training. Along with Coach

 Brown's blantant failure to act in compliance with the established district Policy

3116-R: Athletics, 2119 and  2119-R Bullying and Prevention and Intervention policy

and procedures. Plaintiff  would not have felt very vulnerable, fearing for his health

and safety  and in desperation, feel the need to call 911 (Tulsa Police) seeking

9

protection from  acts of bullying harassment and threats of bodily harm on September

2, 2022. due to BTW's reckless disregard to take quick action to stop and provide

protection from  the ongoing bullying harassment while preventing additional physical

assaults.

**24. Cause of Action: Negligence §21-93 and §25-6 and  §23-13**

*I allege the following:*

1.    After the Plaintiff notified the police on Septemeber 2, 2022 around

3:15pm about impeding threats of violence made by a select group of  athletes at

the "BTW" field house around 3:20pm. Tulsa Police notified the campus police JW

and  some school officials immediately intervened. Plaintiff  found in the coach's

meeting room in the field house, prohibited from entering  the locker room  as per.

head coach directive due to the threats of bodily harm  made by three athletes.

Despite the coach witnessing the threats of violence he still  chose not to comply

with district Policy 3316-R nor Policy 2119. On September 2,2022  at about 4:15p

the Tulsa Police Department  aka "TPD"  concerned for Plaintiff health and safety,

followed up with a wellness check with a caring visit from a TPD Officer around

4:35p making certain Plaintiff was safe and sound and out of  harm's way. Despite

the fact, he couldn't intervene any further as desired  due to  jurisdiction. Howbeit,

he promised to forward concerns to the North Tulsa School Resource Officer, D.

Alexander ensuring he'd phone the Plaintiff to further assist. During the time of the

Tulsa Police wellnes check on September 2, 2022 around  5:00pm the Plaintiff

received a phone call from Defendant 3, Dean Arterberry  reaffirming her

investigation was completed and the assault allegations were found to be true and

correct. However, due to safety concerns she wanted to schedule a Safety Plan

Meeting via Zoom on Tuesday, September 6, 2022 @10am.

On September 6, 2022 @10am the Plaintiffs met with Defendant 2, Dr. Woolridge, principal, Defendant 3, Dean Arterberry alongwith a couple of lead school officials. During meeting, the mother, Plaintiff very concerned, shared complaints of how the minor, Plaintiff had been experiencing increase threats of violence due to Defendant 3, Dean Arterberry's atrocious investigative actions which put the minor, Plaintiff in harms way, students were ganging up on him the cafeteria, threatening physical violence, kids telling him to take his clothes off because he wasn't a Hornet but a snitch, a bit..and a trader, alongwith athlete, TG going around touching the minor, Plaintiff along with other male students in their private area. During this September 6, 2022  ZoomMeeting; Defendant 2, Dr. Woolridge and Defendant 3, Dean Arterberry despite being required under the law, and district Policy 2219 encourages students to report and require staff members to submit acts of  bullying reports to Defendant 2, Dr. Woolridge, the principal and/or her designee. The Plaintiffs mystified by Defendants 2, Dr. Woolridge and Defendant 3, Dean Arterberry's reactions to their complaints, together, they were in absolute denial and full cover-up mode once the bullying reports were received. Thereby, trying to make the Plaintiffs feel awfully bad about reporting, by that, began to use gaslighting tactics to sway the Plaintiff to forget about the allegations of verbal, physical and sexual bullying by TG  acting as if the Plaintiff  was delusional and clueless to their own experiences. Nonetheless, the Plaintiff consistently restated the allegations setforth within this no. 24 cause of action above, and are incorporated by reference as if setforth at length herein. AND finally, with much frustration, Defendant 2, Dr. Woolridge realize her gaslighting efforts to deceive and manipulate were ineffective therefore, chose to email a report form to the  Plaintiff to complete and return. The

minor, Plaintiff returned to school around 8:20am  on Septemebr 7, 2022 with the

Safety Plan in place. As a consequence, due to fear of  punishment, athletes  were

directed not to talk to Plaintiff by Defendant 3, Dean  Arterberry. Thereby, isolating

Plaintiff by issuing a "no-contact order" to his friends while on the otherhand,

unprotected from reprisal, retaliation and false accusations from Defendant 2, Dr.

Woolridge, Defendant 3, Dean Arterberry, two  choice athletes, 7 skillful  bullies and

Resource Officer  Derrick Alexander.


**25. Cause of Action**: Defamation,  Civil conspiracy and Improper Suspension

a. **"Due Process" rights violated outlined in the Title IX Grievance  Procedures pursuant to Title IX Regulations adopted by the U.S Department of Education(USDOE), effective August 14, 2020.**
b. *First, Fifth ,Sixth and Fourteenth Amendments of the U.S.Constitution (see 42 U.S.C. §1983) violated.*
c. **Title VI  of the Civil Rights Act of 1964 violated**
d. **Defamation Title 12, section 1441 and section 1442. (Okla.Stat.tit.12§1441 and 1442) and §21-781**
e. **Education Amendments of 1972, ("Title IX"), 20 U.S.C.§§ 1681et seq.,violated**
f. **Oklahoma Statues § 70-24-100.4 School Safety and Bullying Prevention Act**
g. **Negligence: §21-93 and § 25-6 and  §23-13**
h. **Improper suspension §24-101.3. Out-of-school suspensions–Right to appeal**
i. **\*Civil rights conspiracy 18 U.S.C.§ Section 241( Section 241)**
j. **21 OK Stat § 21-421**

*I allege the following:*

1. On the morning of September 7, 2022. Sadly, at no fault of TPD Officer as

per.  allegations setforth in no. 24  Cause of Action, above, and incorporated by

reference as if setforth at length herein.But instead, Resource Officer Alexander

followed up as a confidant and expeditiously notified Defendant 2, Dr. Woolridge

and Defendant 3, Dean Arterberry directly about the bullying reports received by

TPD officer from the Plaintiff on September 2, 2022. As a result, Defendant 2, Dr.

12

Woolridge and Defendant 3, Dean Arterberry, immediately enraged, collude and

conspired with Resource Officer Alexander, in retaliation, together they determined

to injure the Plaintiff any cost and by all means. Thereby, together they decided

to make false claims of sexual misconduct using two students to say the Plaintiff

sexually assaulted them while refusing to make mention of these allegations to the

Plaintiff. As a result, Officer Alexander wrote two sexual assault reports. On

September 8, 2022. Plaintiff returned to school @ 8:25am. AP Lazdins received

the minor, Plaintiff out of his third hour Science class around 10:40a and

escorted him to Defendant 3, Dean Arterberry's office with Defendant 2, Dr.

Woolridge, principal with Campus Police J. W. present to review and sign Safety

Plan documents from the September 6, 2022 Zoom meeting. Upon completion of

signing the safety plan documents AP Lazdins accompanied minor, Plaintiff to the

receptionist office rather than back to class. Plaintiff resided in the receptionist

office confused and blind-sided by what was happening,eager to returnto class, he

began asking why he was just sitting in the office; but without reason AP Lazdins

just simply prohibited him from returning. While this activity was happening,

Defendant 3, Dr. Woolridge phoned the mother, Plaintiff around 10:30am stating

she needed to come pick up the minor, Plaintiff right away due to him being

suspended, not mentioning any required disciplinary responses and interventions.

Immediately, the mother, Plaintiff drove frantically over to "BTW" very concerned,

while deeply desiring to know the happenings. However, upon arrival Defendant 2,

Dr. Woolridge, Defendant 3, Dean Arterberry, AP Myers and Camp Police Officer J.

W greeted the mother, Plaintiff outside in front of "BTW"school entrance. The

mother,Plaintiff jumped out of the car, very alarmed and recording asking what

happened? What did my son do? without hesitation, Defendant 2, Dr. Woolridge,

13

with a mask on, asked the mother, Plaintiff did she call the police? The mother, Plaintiff replied, without hesitation, yes! last week, Friday  when my son was being threatened with physical harm if he goes into the locker room." Immediately, in fury, *Defendant 2, Dr. Woolridge said "I'M DONE"* and handed the mother, Plaintiff an envelope with a Suspension Notice inside along with a 2022- 2023 Student and Family Guide To Success HandBook. The mother, Plaintiff opened the envelope and read the suspension notice which stated the minor, Plaintiff violated district Policy 318 Sexual Harassment which constitutes sex  discrimination under Title IX. The mother, Plaintiff screamed, No way! asking Defendant 2, Dr. Woolridge, principal "what did her minor, Plaintiff do to get such a cruel and excessive suspension of 150 days, to return the following year?" "What  did he do? This is not my son" Defendant  2, Dr. Woolridge replied," I can not tell  you", adding,"there are two police report numbers on the envelope. The mother,  Plaintiff again asked "what did my son do?" Defendant 2, Dr. Woolridge again stated, "I can't tell you, he's a minor, you have to find out from the police. It's out of  our hands, go to the police to find out." Campus Police J. Williams, also directed the mother, Plaintiff to go downtown to the Police Department. The school can not say. It's out of their hands. The mother, Plaintiff said, where is my son? Is he alright? where is he? Like clockwork, Officer Scott quietly walked the minor, Plaintiff to the front of "BTW" entrance doors. The minor, Plaintiff saw his mother outside, walked  up to her asking,"Mommy why are you here? I have to go back to Science class"  the mother, Plaintiff then said, "No, son, you have to come with me." The minor  said, "why mommy? I have to go back to class." The mother, Plaintiff asked Defendant 2, Dr. Woolridge, does the minor, Plaintiff know what's going on?  Defendant 2, Dr.Woolridge said, "No!" the mother, Plaintiff told the minor,Plaintiff to get all his things.The minor, Plaintiff very confused

14

continually asking, " WHY Mommy?"  "Why? " I have to get back to my Science class." The mother, Plaintiff then replied, "I'll tell you in the car." The mother, Plaintiff asked for all of the minor, Plaintiff personal things (football gear) along with the $350 football fees paid. Defendant 2, Dr. Woolridge stated she had nothing to do with that. Football is not a part of the school. However, directed AP Myers and Officer Scott to escort the minor to the Fieldhouse locker room to retrieve all of his personal things.Unfortunately the helmet face shield, 2 IBELIEVE towels, and 2 IBELIEVE HEADBANDS were missing. valued at $87.  Defendant 6, Dr. Wallace deliberately failed to return personal property despite multiple requests.

26. **Cause of Action:  Negligence: §21-93 and § 25-6 and  §23-13**

**Civil Rights Conspiracy 18 U.S.C. § 241 (Section 241)**

**First, Fifth ,Sixth and Fourteenth Amendments of the U.S.Constitution (see 42 U.S.C. §1983) violated.**

I alledge the following:

The Plaintiffs drove to Police Department to find out what the minor had been accused of. However, no one would share any information because he  was a minor. The Plaintiffs, very overwhelmed because absolutely NO ONE would  or could share any information. Despite him being the mother, Plaintiff biological son. But for the failure of Defendant 2, Dr. Woolridge to exercise reasonable care, by not  acting in accordance with district Policy 2619-R the minor, Plaintiff constitutional  rights would not have been violated, nor would he have suffered in desperation, longing to have knowledge into the alleged sexual misconduct with an explanation of the underlying Facts. Not to mention, he would not have suffered an improper  suspension on September 8, 2022. @ 10:50am by Defendant 2, Dr. Woolridge, due to her intentionally abandoning her obligation and

duty under the law ensuring  the minor, Plaintiff  exercised his "Due Process rights"

prior to her abrupt suspension on an emergency basis, deliberately insubordinate

thus breaching district P-2607, 2619 and 2619-R.Thereby, attempting again, to

deceive and manipulate, taking   unfair advantage, refusing to act in good faith, but

in retaliation, misusing the legal procedure due to the factual allegations setforth in

In all of the above factual allegations and are incorporated by reference as if setforth

at length herein. By doing this,  Defendant 2, Dr. Woolridge caused the Plaintiff to

suffer the loss of attending his  choice school, being that, "BTW" alone inTulsa offers

advance learning opportunity  to obtain his International Baccalaureate (IB Diploma)

a two-year comprehensive  and rigorous pre-university curriculum. The minor,

Plaintiff, an advance honor  student would not have been robbed of his opportunity to

be successful IB student  with the chance to be granted advanced placement credit

at the finest universities   and colleges in the nation aimed at becoming a lawyer and

a judge some day.  But for failure of Defendant 2, Dr. Woolridge, principal and

Defendant 3, Dean  Arterberry, to exercise reasonable care, demonstrate prudence

and restraint,  the minor, Plaintiff constitutional rights would not have been violated

thereby,  causing him to needlessly suffer mentally, emotionally and socially as a

result of  being intentionally deprived of his right to be given an oral and/or written

Notice describing in detail, and clarifying precisely with whom, how, when, where,

and how often the minor, Plaintiff allegedly violated district Policy 318: Title IX

Sexual  Harassment according to Title IX  Regulations with an opportunity to

respond before  being suspended for 150 days(a year) contrary to district policy on

Thursday, September 8, 2022 @10:45am. On top of that, the minor, Plaintiff "Due

Process"  outlined in the Title IX Regulations REQUIRES compliance with the rules

setforth by U.S. Department of Education would not have been violated.

**27.    Cause of Action:    Negligence: §21-93 and § 25-6 and  §23-13**

   **I allege the following:**

                But for the failure of Deborah Gist to exercise reasonable care, by

addressing the Plaintiff unlawful suspension when the Plaintiff called her office

multiple times, and  included her in multiple emails seeking fairness.  Due to no

response, the Plaintiff  delivered flyers to the school board meeting in an attempt to

bring attention to the  unfair and unjust  treatment.  The Plaintiff personally gave Dr. D.

Gist a flyer, being  hopeful she would respond in a professional manner in accordance

to district policy,  state and federal laws. Nonetheless, Dr. Gist sent her representative

to ask the  Plaintiff her name and number to follow up. Unfortunately, she never did.

As a  result, Plaintiff continued to suffer an unlawful suspension and robbed of his

desired learning exeperience if she  would have intervened. Dr. Gist, recused herself,

passing the Plaintiff's  contact information and flyer onto  Defendant 6, Dr. Wallace.

But for Dr. Gist, morally indifferent, failed to exercise reasonable care, the Plaintiff

would not have been bullied with a threatening phone call from Defendant 6,

Dr. Wallace asking if the Plaintiff had put out a flyer at the school  board meeting?

And the Plaintiff emphatically  responded yes! FIX IT! saying, what you are doing is

absolutely wrong. FIX IT!  Asking , what did her minor, Plaintiff do to deserve this?

Defendant 6,  Dr. Wallace responded, "I can not say." The mother, Plaintiff then

said, she was going to the media. Defendant 6,  Dr. Wallace, using prohibited

17

retaliatory, intimidating, threatening, fear tactics stated, "If the MOTHER goes to the media regarding what he and TPS, Washington HS was doing to her MINOR, he, (TPS) would come after him, emphazing the BIGNESS of their district and lawyers" stating the Plaintiff do not want to do that. Repeatedly stating, they would come after the minor, Plaintiff. IF the minor, Plaintiff would not have heard Dr. Wallace threaten to come after him, he would not have fallen suddenly to the floor, for the first-time ever, uncontrollable shaking, eyes rolling back/ forward in a daze, frothing at the mouth, turning jet black, stopped breathing, un-responsive for 20minutes right before the mother's eye, died on the floor in his room one day later around 11:30 am after hearing a professional school leader calling the mother, Plaintiff making an official threat, promising to come after her son, a minor, Plaintiff if she calls the media and tell them what they are doing to your son. An emergency 911call would not have been made and the ambulance and police would not have rushed over. The MOTHER would not have been so overwhelmed and overcome with fear yet, full of faith in God, prayed and watched GOD bring her son back. The MINOR would not have gone to "CORE" emergency surrounded by a caring physician, loving nursing staff, and on-call staff being called in to conduct multiple brain tests confirming the miracle power of GOD. However, the physician strongly suggested following up with the MINOR's primary care physician. In doing so, the primary care physician would not have been stunned and in deep shock due to the MINOR great

18

medical history. Therefore, immediately requesting one of Tulsa's top pediatric

NEURO physicians to examine him. However when the NEURO physician examined

the minor, Plaintiff , being uncertain of the minor's Plaintiff death. However, could not

rule out , therfore prescribed the minor, Plaintiff Valtoco 10mg, and be monitored for

seizures. AND, the minor, Plaintiff's primary physician would not have felt the need to

referr him to mental health services due to concerns of possible stress. AND the

Director of Outpatient Services, LCSW would not have had need to evaluate and

treat him for such.

28. **Cause of Action:   Negligence: §21-93 and § 25-6 and  §23-13**
**Civil Rights Conspiracy 18 U.S. Code, Section 241**
**First, Fifth ,Sixth and Fourteenth Amendments of the**
**U.S.Constitution (see 42 U.S.C. §1983) violated.**
**Defamation Title 12, section 1441 (Okla, Stat. tit.12 § 1441)**
**Okla.Stat. tit.25, §§ 1101-1706 ( Intentional Discrimination)**
**I allege the following:**

But for the failure of Defendant 6, Dr. Wallace to exercise reasonable care by

fulfilling his professional duties to serve as resource to the district, schools, parents,

and students regarding student discipline. He consistently and consciously decided

to not only address the Plaintiffs ongoing bullying concerns but also, in retaliation

refrained from addressing the improper suspension according to district Policy:

2607, 2615, 2619 and 2619-R. In addition to Federal Title IX Regulations. The

minor, Plaintiff just would not have suffered such an humiliating, embarrassing and

unlawful suspension. But for the malicious negligence of Defendant 6, Dr. Wallace,

his intentional failure to exercise reasonable care by adhering to his required

knowledge of Federal, State,  Laws, District policies and procedures. Defendant 2,

Dr. Woolridge and Defendant 3,  Dean Arterberry would have been prohibited from

defaming the MINOR's name and character with false and fictious allegations of

violating district Policy 318 Title IX  Sexual Harassment. But rather joined the  Civil

Rights Conspiracy falsely accusing Plaintiff of violating Title IX Sexual harassment

along with Defendant 2, Dr. Woolridge and Dean Arterberry. Hence, the minor, Plaintiff

would not have suffered retaliation,  being falsely accused, name defamed,  due

process rights violated, and abrutply  suspended from his choice high school and

robbed of his legal right of full access to  advanced  learning, scholarships and

athletic opportunities.  Defendant 6, Dr. Wallace  failure to act  consistently in

accordance   Federal, State, and District laws, policies, procedures, and best practices

regarding student discipline caused the Plaintiff  to suffered an unjust and

unlawful suspension without his "due process" in education rights conducted and

completed. AND,MOTHER, Plaintiff not privileged to any information surrounding

the alleged Title IX Sexual Harrassment policy 318. Thus, violating the Plaintiffs Six

Amendments right to an impartial hearing, knowledge of accusers, AND the nature

of the charges, and to see and know the evidence against him. Nonetheless, in

defiance, Defendant 6, Dr. Wallace denied the Plaintiff equal access to "BTW"

education program and activities permanently, never allowed to return, inconsistent

to district Policy 2619-R, Federal and state laws. But for the intentional negligence

of Defendant 6, Dr. Wallace,  the minor, Plaintiff would not have been threaten,

intimidated,  retaliated  against, and betrayed by people who suppose to care for

minor as a guardian ( loco parentis). However, Defendant 6, Dr. Wallace took great

pleasure in bullying the mother, Plaintiff  by abusing his power to twist, turn and

manipulate the district policies and procedures with the intent to protect and cover

up Defendant 2, Dr. Woolridge  and Defendant 3, Dean Arterberry reckless conduct in

addressing the minor, Plaintiff bullying concerns as per. District policy, falsely

accusing him and then improperly suspending him in retaliation.  Intentionally

deceiving and depriving the Plaintiff of his constitutional rights under the color of

law. In addition to, directing staff members to do the same  inconsistent with district

policies and  procedures. Defendant 6, Dr. Wallace worked diligently to prevent the

Plaintiffs from being heard thus violating their Title VI  of the Civil Rights Act of 1964

(Title VI) and Title IX of the Education Amendments of 1972 (Title IX) and prevailed.

The mother, Plantiff would  not have experienced vicarious trauma as a result of

witnessing and experiencing the life- altering  effects of her minor, Plaintiff being

victimize, traumatized, defamed, and deprived of his protected rights and privileges

secured by the Constitution for simply exercising his First Amendment right to

report bullying due to BTW's omission  to heed to district bullying policies and

oklahoma's anti bullying laws and policies and conducting a flawed investigation

that brought more harm, thus creating a  hostile environment causes the minor,

Plaintiff  to feel fearful of life  being in danger and in desperation called the police

21

seeking safety and protection. Despite Title VI of the Civil Rights Act of 1964 (Title

VI) and Title IX of the Education Amendments of 1972 (Title IX) prohibiting

retaliation against individuals who assert their rights under these laws in programs

or activities receiving federal financial assistance. Despite TPS being state actors.

Everytime, the Plaintiff exercised their protected rights to report bullying and the

unlawful suspension under the First and Fourteenth amendment to the constitution

to the powers that be, Defendant 6, Dr. Wallace went harder, abusing his power, with

an iron hand, making every effort to discredit the mother and minor, Plaintiff with the

intent to stop and block them by fabricating erroneous lies thus preventing the

Plaintiff from being heard, with the intent to keep the MINOR out of Washington HS,

having full access to his choice school for advance learning, with opportunities to

obtain academic and sports scholarships.

**29. Cause of Action:    First, Fifth ,Sixth and Fourteenth Amendments of the**
**U.S.Constitution (see 42 U.S.C. §1983) violated.**
**Negligence: §21-93 and § 25-6 and  §23-13**
**Civil Rights Conspiracy 18 U.S. Code, Section 241**
**Okla.Stat. tit.25, §§ 1101-1706 ( Intentional Discrimination)**

**I allege the following:**

Due to Defendant 6, Dr. Wallace's non-compliance to district policies and

procedures federal, state, and local laws. Plaintiff, with the hope of being treated

fairly according to district suspension policies with the permission to return to school.

However, when turning to Defendant 7, Michelle Sigfried, she too, failed to exercise

reasonable care, despite truthfully and thoroughly investigating, finding the minor,

Plaintiff had no behavior record, was not guilty of violating district Policy 318 Title IX

Sexual Harassment or any other school rules and regulations with full knowledge

that the term of suspension was not reasonable nor in compliance with district policy.

For this reason, Defendant 7, Michelle Sigfield went on an extensive witch hunt

seeking to devour the minor, Plaintiff, searching for anything to justify the vengeful

acts of Defendant 2, Dr. Woolridge, principal. In doing so, Defendant 7, Michelle

Sigfield willingly chose not to adhere to district policies nor demonstrate her acquired

Title IX training that was to be implemented on or by August 14, 2020. Because of

this, the minor, Plaintiff suffered unfair treatment without equal application and

protection under the laws. By this, she chose to aid and abet in the perpetuated

sham; the civil rights conspiracy, and in shady way, also falsely accused the minor,

Plaintiff of violating District Policy 318 Title IX Sexual Harassment with Defendant 2, Dr.

Woolridge, Defendant 3, Dean Arterberry and Defendant 6, Dr. Wallace in retaliation.

Disregarding the Plaintiff's civil rights and violating them. Working in concert with

Defendant 2, Dr. Woolridge, fulfilling her desires to have the minor, Plaintiff stripped

of his right to attend and have full access to all sports, academic and social activities

at his preferred place of learning. Defendant 7, Michelle Sigfield, with a conscious

disregard, violated state Title 70.  Schools. §70-24-101.3. Out-of-School Suspension.

In addition to district Policy and Procedure # 2619-R. On top of that, with a reckless

disregard of professional duties she intentionally failed to follow Title IX regulations,

which ensures the Plaintiffs rights are respected and protected. In like manner,

demonstrated prohibited retaliation discrimination. But for the failure of Defendant 7, Michelle Sigfield to exercise her professional and legal duty of care, caused the minor, Plaintiff to continue to suffer an improper, unjust and illegal expulsion and barred from "BTW" at the direction of Defendant 2, Dr.Woolridge and 6, Dr.Wallace. Because of this staffing collusion, the minor, Plaintiff was intentionally denied his student rights coupled with his due process rights under Title IX just to satisfy the desired results of Defendant 2, Dr. Woolridge to have the minor, Plaintiff permanently removed in retaliation contrary to district policy and the minor, Plaintiff civil rights. Because of this cruel, unusual and excessive punishment, the minor, Plaintiff was robbed of enjoying full access and equal opportunities to participate in every aspect of his education free from violence, retaliation, harassment and intimidation. After finding nothing to suffice their unlawful actions. Defendant 7, Michelle Sigfield, chose deceitful manipulation with the intent to deceive the mother, Plaintiff, in to believing her minor, Plaintiff had sexual misconduct issues and was a danger to the school and strongly suggesting he was the problem and would best benefit from mental health services. Thereby, using blame shifting tactics that protect bullies, accuse, punish and label the victim as mentally-ill without one visit with minor,Plaintiff or referring school counseling services to confirm.

30. Cause of Action:    First, Fifth ,Sixth and Fourteenth Amendments of the
                        U.S.Constitution (see 42 U.S.C. §1983) violated.
                        Negligence: §21-93 and § 25-6 and  §23-13
                        Okla.Stat. tit.25, §§ 1101-1706 ( Intentional Discrimination)
                        "Due Process" rights violated outlined in the Title IX
                        Grievance  Procedures pursuant to Title IX Regulations

**adopted by the U.S Department of Education(USDOE),
effective August 14, 2020.**

**I allege the following:**

As a result of Defendant 7, Michelle Sigfied,  failure to act in accordance

with district policies and Title IX Regulations. The Plaintiff then reached out to

Defendant 4, Eva Vindas, Title IX Coordinator due to never being informed of any

Sexual harassment complaints or allegations received. No one at TPS directed the

Plaintiffs to speak to Eva Vindas, Title IX. However, after careful research outside

of TPS the  Plaintiff was inform to speak with the Title IX Coordinator regarding the

said allegations and suspension. Once again,  under the direction of Defendant 6,

Dr. Wallace , Eva Vindas refused to speak with Plaintiff in an effort to preserve the

minor, Plaintiff access to school without unreasonably burdening him contrary to

Title IX  regulations. But for the failure of Eva Vindas, Title IX Coordinator to

exercise reasonable care, the minor, Plaintiff would not have been fictiously and

falsely accused of Sexual Harrassment violation by Defendant 2, Dr. Woolridge,

principal and Defendant 3,  Dean Arterberry.  At minum, after her investigation

found the facts, as alleged did not violate one of the definitions of sexual

Harassment (Servere, Pervasive, and  Objectively Offensive) then the complaint

should have been dismissed −at least from a  sexual harassment perspective.If

alleged conduct  were not covered under Title IX, address under student code of

conduct.  In additon to, being treated unequally and very unfair; and longing for his

Due Process Protections under Title IX Regulations to be observed. The MINOR

would not have been deprived of knowledge of complaints, the complaintants, a

live hearing, a cross- examination supportive measures, etc...And, most importantly,

an OUTCOME NOTIFICATION.

31. **Cause of Action:**  **First, Fifth ,Sixth and Fourteenth Amendments of the**
   **U.S.Constitution (see 42 U.S.C. §1983) violated.**
   **Negligence: §21-93 and § 25-6 and  §23-13**
   **Civil Rights Conspiracy 18 U.S. Code, Section 241**
   **Defamation Title 12, section 1441 (Okla, Stat. tit.12 § 1441)**
   **"Due Process" rights violated outlined in the Title IX**
   **Grievance  Procedures pursuant to Title IX Regulations**
   **adopted by the U.S Department of  Education(USDOE),**
   **effective August 14, 2020.**
   **Okla.Stat. tit.25, §§ 1101-1706 ( Intentional Discrimination)**

**I allege the following:**

Despite all of the Defendant's failure to exercise reasonable care, the Plaintiffs

continued to seek fairness by requesting a suspension appeal. The appeal was

granted for October 7,2022 @ 11:00a with Defendant 5, Stephanie Andrews

by Renee Weygrant, an assistant to Defendant 6, Dr. Wallace.  A suspension

packet, nor the opportunity to choose  two  teachers to join the appeal was not

not allowed inconsistent with district policies. In utter dismay,   Defendant 5, Stephanie

Andrews purposely deceived the Plaintiffs stating she did not have any information

to share. She only knew he had no behavior record. Also stating there's nothing

wrong with having sexual harassment on your record it won't prohibit him from

enrolling into college, don't worry about it. The suspension appeal was never

conducted nor completed in the light of Plaintiff's request.  Despite Defendant 5,

Stephanie Andrews stating she had no information to review  and share with the

Plaintiffs she mailed a letter dated October 10, 2022 stating she  had completed her

Suspension Review Hearing and reached her suspension decision and modified the

suspension to Code 315 Title IX Discriminatory Harassment. How so, when

according to the Behavior Response Plan Booklet states the suspension decision

is to be reviewed by the Student Suspension Review Committee (SSRC)  which is

established by the principal and consists of at least four building teachers  and/or

administrators. This is opposite of district school policy and procedures. She also

unlawfully sentenced him to an Alternative School without first discussing  it  with the

mother,Plaintiff.  But for the failure Defendant 5, Stephanie Andrews to exercise

reasonable care, the Plaintiff would  suffered his name being  defamed again

by falsely accusing  the Plaintiff of violating 315 Discriminatory Harassment in a letter

October 10, 2022.  Renee Weygandt sent an email on October 17, 2022 detailing

Defendent 5, Steaphanie Andrews decision. As a result of this, The Plaintiffs were not

Only deprived of due process educational rights for Title IX  Sexual Harrassment

allegations but also deprived of Title IX Discriminatory Harassment due process rights

as well. Again, contrary to district policy. While Defendant 6, Dr. Wallace,by design,

permanently banned him from "BTW" contrary to district policy. Also continues to

prohibit the minor,Plaintiff from attending school in a  different district, stating the minor,

Plaintiff is still suspended and has to attend Tracie Academy. Again, against district policy. Defendant has intentionally tarnished the minor, Plaintiff High School transcript and continues to block him from returning to BTW along with enrolling and attending a new school in a different district with the intent to destroy the minor, Plaintiff academic success and future career all in the name of retaliation. He also refused to return the Plaintiff personal things,such as:1.Football helmet face shield/visor, 2. Ibelive headband 3.and a IBelieve towel for a total of $87. 4. And a remaining refund balance of $200 Officer Stovall on 9/13/2022 returned the Plaintiff a partial football refund of $150 in the form of a check along with the Plaintiff back support.

Defendant's actions violated G.G., III's rights under Title IX, which prohibits discrimination on the basis of sex in education programs or activities receiving federal financial assistance. See Davis v. Monroe County Board of Education, 526 U.S. 629 (1999) (https://supreme.justia.com/cases/federal/us/526/629/).

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that Defendant's actions violated G.G., III's rights under Title IX;

B. Enjoin Defendant from further violating G.G., III's rights under Title IX; Injunction restraining Defendant from further violations and to take necessary action To stop the bleeding and restore and make whole the Plaintiff. Redress the damage caused by the initial violation.

C. Award compensatory damages to G.G., III for his loss of free public education the past two years, pain and suffering, and mental and emotional abuse;

D. Declaratory Judgment that Defendant violated Plaintiff's rights as per Title IX, U.S. Constitution's First, Fifth, Sixth and Fourteenth Amendments rights, and Oklahoma

Education Act. In addition to all such violations.

E. Compensation for all damages entitled to caused by such violations.

E. Grant such other and further relief as this Court deems just, equitable and proper.

Respectfully submitted,

6/5/24.

Dated: June 5, 2024

Paulette Taylor Obo G.G.III a minor
7521 S.Olympia
West#1010
Tulsa, Oklahoma 74132
United States
918-902-5873
1georgegibbs@gmail.com

Notary _Carissa Chatham_
Com #2204173
EXP 10/20/26

CARESSA CHATHAM
NOTARY PUBLIC - STATE OF OKLAHOMA
MY COMMISSION EXPIRES OCT. 20, 2026
COMMISSION # 22014173

# UNITED STATES POSTAL SERVICE

DONALDSON
1423 TERRACE DR
TULSA, OK 74104-9998
(800)275-8777

09/05/2020                                    08:58 AM

Product              Qty    Unit        Price
                            Price

Priority Mail®        1                    $9.65
Sm Flat Rate Env
Tulsa, OK 74114
    Flat Rate
    Expected Delivery Date
    Wed 09/09/2020
    Tracking #:
    9505 5146 2612 3248 6163 97
    Insurance                              $0.00
    Up to $100.00 included              $9.65

Total                                      $9.65
─────────────────────────────────────────────
Grand Total                                $9.65

Cash                                      $10.00
Change                                    -$0.35

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
1-800-222-1811.

Save this receipt as evidence of
insurance. For information on filing an
insurance claim go to
https://www.usps.com/help/claims.htm
or call 1-800-222-1811

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device.

or call 1-800-410-7420

UFN: 39834-0004
Receipt #: 840-57100043-2-4310526-2
Clerk: 4

# U.S. Postal Service
## CERTIFIED MAIL RECEIPT

SEP

Certified Mail Fee
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $_____
☐ Return Receipt (electronic)      $_____
☐ Certified Mail Restricted Delivery $_____
☐ Adult Signature Required         $_____
☐ Adult Signature Restricted Delivery $_____
Postage                            $_____
Total Postage and Fees             $_____

Sent To _____
Street and Apt. No., or PO Box No. ____
City, State, ZIP+4® _____

                                   $4.35
    Return Receipt
    Tracking #:
    9590 9402 8027 2305 1108 65
Total                              $9.97
─────────────────────────────────────────────
Grand Total                        $9.97

Debit Card Remit                   $9.97
    Card Name: MasterCard
    Account #: XXXXXXXXXXXX4989
    Approval #: 605
    Transaction #: 243
    Receipt #: 00243
    Debit Card Purchase $9.97
    Card Swiped

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
and/Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
1-800-222-1811.

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device.

or call 1-800-410-7420

UFN: 39834-0004
Receipt #: 840-57100043-2-4310559-2
Clerk: 4

CARESSA CHATHAM
NOTARY PUBLIC - STATE OF OKLAHOMA
MY COMMISSION EXPIRES OCT. 20, 2026
COMMISSION # 22014173

Notary Caressa Chatham
Com #22014173
Exp 10/20/26



6.5.24

Exhibit I



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Tulsa Public Sch.
Sarah Bozone, Clerk
3027 S. New Haven Ave.
Tulsa OK 74114

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 8027 2305 1108 36

2. Article Number (Transfer from service label)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Sarah Bozone_
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Sarah Bozone 9.5.23

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

Governmental Tort Claims
9 in total

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

Pg2 6.5.24.

Exhibit 2

## Attention:

Tulsa Public School Governing Board

### Sarah Bozone, *Board Clerk*

3027 S. Haven Avenue, Tulsa, OK 74114

bozonsa@tulsaschools.org

Enclosed: Nine Governmental Tort Claims

**Received by:** _Mekala Corrigan, deputy clerk of board_
**Date:** _9.7.23_

Delivered by: P. ___ 9.7.23

6.5.24
Exhibit 3

**From:** Weygandt, Renee
**Sent:** Monday, October 17, 2022 9:23 AM
**To:** paulettet858@gmail.com
**Subject:** George Gibbs

Ms. Taylor,

Per our conversation on Tuesday October 11, 2022, the following was discussed:

1. George's original suspension was for 150 days starting on 9/8/22

2. The Ban Appeal with Stephanie Andrews was on 10/7/22 at 10:30

3. The Suspension Appeal with Stephanie Andrews was on 10/7/22 at 11:00

4. The Suspension was modified to Code 315 Discriminator Harassment and reduced to 25 days of Suspension and Enroll at TRAICE Academy on 10/13/22.

5. TRAICE Academy is an 18 week program, but at 9 weeks there is an evaluation and if George meets 85 percent of the Criteria George will be able to enroll at his home school which is Hale HS.

6. The Ban was upheld.
7. TPS will not release any of George's records until the following has been turned in at the Enrollment Center to Dr. Wallace's office:

8. BTW Student ID
9. Chrome Book and Charger

The Suspension Appeal decision letter will be following this email.

Renee Weygandt | Discipline Support Assistant
Tulsa Public Schools, Student and Family Support Services Department
2819 S New Haven Ave., Room 327, Tulsa, OK 74114Zip

T: 918-746-6457
C: 918-***-****
weygare@tulsaschools.org

P3G 6-5-24

Notary *Caressa Chatham*
Comm 22014173

Exhibit 4

CARESSA CHATHAM
NOTARY PUBLIC - STATE OF OKLAHOMA
MY COMMISSION EXPIRES OCT. 20, 2026
COMMISSION # 22014173

## APPEALS OF OUT-OF-SCHOOL SUSPENSIONS

Students who have been suspended out of school have a right to appeal their suspension by requesting a hearing either before the Suspension Review Committee (SRC), the Superintendent or designee or a hearing officer as may be appropriate. While a hearing is pending, the suspension will be held in abeyance allowing the student to have the right to attend school under such in-School-Intervention restrictions as the principal deems proper. However, participation in any extra-curricular activity is prohibited. A student may be prohibited from attending school if, in the judgment of the principal, the conduct for which the student was suspended reasonably indicates continued attendance by the student would (1) be dangerous to other students, staff, or school property, and/or (2) interfere with the educational process at school.

## ACCORDING TO STATE LAW, SUCH APPEALS ARE LIMITED TO ONE OR BOTH OF THE FOLLOWING:

*Is the student guilty of a violation of the school rules and regulations?
*Is the term of the suspension reasonable and in compliance with the Behavior Response Plan?

## SUSPENSION REVIEW COMMITTEES

**Suspension Review Committees** (SRC) exist at each school and are created through the following process:
*A list is made up of professional staff who volunteer at the beginning of the school year to serve on the SRC.
*Volunteers must attend district training at the beginning of the school year.
*The SRC for each hearing will be comprised of:
Two (2) volunteers of the student's and/or parent/guardian's choice picked from the list of volunteers (the parent/guardian may submit five (5) names in order of preference) and:
One (1) volunteer appointed by the principal and:
One (1) volunteer, appointed by the principal, who will serve as a non-voting chairperson and facilitator of the discussion.
*Volunteers involved in the incident cannot serve on the SRC.
*Volunteers have the right to refuse to serve for any particular case.

**Note:**
*When an incident occurs that involves more than one student and multiple suspensions, the same committee members* that were appointed by the principal, when available, will hear all appeals associated with the incident.
The SRC hearing will be scheduled with consideration given to the hours of working parents whenever possible. The student and parents/guardians and the principal or designee who issued the suspension shall be present at the hearing, but shall not remain during the deliberation of the committee or participate in the decision. The student and parents/guardians may choose to have one resource person assist and advise, but that person will not be allowed to address the committee and must also leave during the committee's deliberation (interpreters are acceptable).
The SRC will meet as soon as possible after receipt of the appeal request and the principal will notify the student's parents/guardians of the time and place of the hearing not less than 24 hours in advance of the hearing.
The SRC is charged to determine the guilt or innocence of the student and/or the reasonableness of the term of suspension, and must decide one of the following actions: to sustain (the suspension remains in force as enacted), to rescind (the suspension becomes null and void) or to modify (the suspension may be changed to reflect any number of days suspended between the minimum and the maximum days allowed within the offense category specified). The SRC may not change the category.

## IF THE OUT-OF-SCHOOL SUSPENSION IS FOR TEN (10) DAYS OR LESS?

Within five (5) school days from the date of suspension, the student's parent/guardian may request, in writing, a hearing by the building SRC. THE DECISION OF THE SRC WILL BE FINAL AND NONAPPEALABLE.

## IF THE OUT-OF-SCHOOL SUSPENSION IS FOR MORE THAN TEN (10) DAYS?

Within five (5) school days from the date of suspension, the student's parent/guardian may request, in writing, a hearing of the building SRC.
*If the student's parent/guardian is not satisfied with the SRC's decision, a request for a further hearing by the Superintendent or designee may be made by written notice to the school principal within five (5) school days after the parent/guardian is notified of the SRC's decision.
*The principal may also appeal the SRC's decision to the Superintendent or designee within five (5) school days after the SRC's decision.
*The Superintendent or designee will schedule a hearing as soon as possible, notify the parent/guardian of the time and place of the hearing at least 24 hours prior to the hearing, and notify the parent/guardian that they and the student have a right to be present at the hearing.
*The Superintendent or designee will review the facts, determine the guilt or innocence of the student, the reasonableness of the term of suspension, and decide to sustain, rescind, or modify the out-of-school suspension (including change of category), or change the out-of-school suspension to an alternative school placement. The Superintendent or designee will notify the student's parent/guardian of the decision in writing.
*If the decision of the Superintendent or designee is to sustain or modify the out-of-school suspension, the parent/guardian may appeal that decision to a hearing officer except that a decision to change the out-of-school suspension to an alternative school placement is not appealable.

If the parents/student are not satisfied with the decision of the Superintendent or designee, the parents/student may further appeal to a Hearing Officer.
*A written request from the student's parent/guardian must be made to the Superintendent within five (5) school days after the parent/guardian has been notified of the decision of the Superintendent or designee.
*If no appeal is received within the five (5) days the decision of the Superintendent or designee is final.
*The hearing officer will set the time and place of the hearing.
*The parent/guardian will be notified in writing of the time and place of the hearing at least 24 hours prior to the hearing. The student and her parent/guardian will have a right to be present in person at the hearing. The hearing officer will determine the guilt or innocence of student and the reasonableness of the term of the suspension as determined by the relevant category and action level.
THE DECISION OF THE HEARING OFFICER IS FINAL AND MAY NOT BE APPEALED.

CARESSA CHATHAM
NOTARY PUBLIC - STATE OF OKLAHOMA
MY COMMISSION EXPIRES OCT. 20, 2026
COMMISSION # 22014173

*[Handwritten:]* I was told there was no hearing officer and Could not go to school board ☹

*[Handwritten:]* is it a DRC or SRC
either one - we weren't allowed

*[Handwritten:]* 3L  6.5-24

*[Handwritten:]* Notary Caressa Chath___  Exp 10/20/26
Comm # 22014173

*[Handwritten, blue:]* Exhibit 5

## Tulsa Public Schools - Notice of Out-of-School Suspension

September 8, 2022

WASHINGTON HIGH SCHOOL
1514 E Zion St
TULSA, OK 74106

To the parents/guardians of GEORGE GIBBS:

Safety, security and student success are priorities for Tulsa Public Schools and WASHINGTON HIGH SCHOOL. Student conduct is a critical factor in maintaining a safe learning environment for students.

GEORGE was referred to the office for violation of Tulsa Public Schools' Target Behavior: 318 TITLE IX SEXUAL HARASSMENT.
The violation occurred on ~~09/07/2022~~. *Various dates*

GEORGE chose to disregard this Target Behavior which resulted in the following consequence:

SUSPENDED FROM SCH.

The Out-of-School Suspension will be for a period of 150 days, to begin on 09/08/2022 and end on 05/25/2023.

GEORGE may return to school on 08/22/2023. For suspensions that extend into the next school year, you will need to bring proof of residency with you when your student returns to school. Students suspended out of school will have an excused absence recorded on the attendance records. Student who do not return on the assigned date will have an unexcused absence recorded on the attendance records; please make sure that your student returns to school on the assigned date.

Parents and students are responsible for any missed course work during the suspension. The return date may be adjusted due to cancellation of school.

Please feel free to call 918-925-1000 if you have any questions about this Discipline Referral and/or the Suspension assigned.

Sincerely,

Melissa Wooldridge

A parent conference _____ is required _____ is not required before the student may return to school.

NOTE: THE PRESENCE OF A SUSPENDED STUDENT ON ANY PUBLIC SCHOOL CAMPUS IS PROHIBITED.

*pending DRC decision - you will be notified of appeal rights and process for appeal by DRC office.*

*Notary Carissa Chath*
*Comm #22014173*
*EXP 10/20/26*

*Exhibit 6*

CARESSA CHATHAM
NOTARY PUBLIC - STATE OF OKLAHOMA
MY COMMISSION EXPIRES OCT. 20, 2026
COMMISSION # 22014173

CARESSA CHATHAM
NOTARY PUBLIC - STATE OF OKLAHOMA
MY COMMISSION EXPIRES OCT. 20, 2026
COMMISSION # 22014173

PATHWAYS TO OPPORTUNITY

For Level 300 offenses, interventions can be used along with disciplinary responses and can range from in-school discipline to long-term suspension. The severity of the consequence and interventions applied in any case will depend on specific circumstances. Students with chronic level 300 offenses may be subject to level 400 interventions.

## PARENT/GUARDIAN CONFERENCE IS REQUIRED FOR ALL 300 LEVEL INFRACTIONS

| Level 300 | Range of disciplinary responses and interventions |
|---|---|
| 300: Fighting | • Student conference |
| 301: Possession of mace, chemical agents or similar materials or devices; **Immediate Campus Police notification required** | • Student/teacher conference<br>• Parent/guardian conference required |
| 302: Disorderly conduct | • Team conference<br>• Restorative conference |
| 303: Forgery or falsification of information | • In school disciplinary action |
| 304: Falsely reporting a crime; **Immediate Campus Police notification required** | • Student required to complete Palmer Assessment (age 12 and over) |
| 305: Verbal abuse of staff | • Repeated infraction may lead to initiation of Project ACCEPT referral |
| 306: Abusive behavior toward school personnel. Staff should not block egress unless to protect the health and safety of others or to protect property. Should evidence indicate staff inciting the response, counseling will be the extent of the consequence. **Immediate Campus Police notification required** | • Long term suspension (not to exceed 45 days) based on totality of the circumstances and repetition of the behavior<br>• Student Success Plan and/or Behavior Intervention Plan |
| 307: Trespassing (including during suspension) **Immediate Campus Police notification required** | • Short term suspension |
| 308: Failure to permit a lawful search or inspection by a school official (SB Policy 2602 and 2602R) **Immediate Campus Police notification required** | **Supports for students transitioning from suspension:** |
| 310: Theft or receipt of stolen property **Immediate Campus Police notification required** | • Schools are expected to provide support services to student returning from suspension to maximize their ability to meet social and academic standards within the community |
| 311: Breaking and entering/vandalism ($500+) **Immediate Campus Police notification required** | • Support services may include any of the range of interventions or a combination of services as best meets the need of the individual student |
| 312: Grand larceny (Theft >$550) **Immediate Campus Police notification required** | • Upon re-entry from suspension, schools may implement Student Success Plans, Child Study Team interventions and Parent Communication Plans. |
| 313: Use, possession of alcohol, drugs or drug paraphernalia; or under the influence of alcohol and or drugs **Immediate Campus Police notification required** School will provide referral for screening and counseling | Project ACCEPT (Alternative, Counseling, Coaching, Educator and Parent Professional Training) students are placed based on recommendation from the school site and review by Director of Student Advocacy. Program components are positive behavior, academic instruction, |
| 314: Assault | |
| 315: Discriminatory harassment; **contact Title IX Coordinator; documented investigation required** | |
| 316: Misconduct based on sex or gender; contact Title IX Coordinator; documented investigation required | |
| 317: Consensual sexual misconduct | |
| 318: Title IX sexual harassment; contact Title IX Coordinator; documented investigation required | |

65-24

Why was I not ever notified?
Why Title IX Coord. Will not share information with me? May we be involved in the process? Do we have a say in this?     Exhibit B

Table of Contents



**TULSA PUBLIC SCHOOLS**

EQUITY   CHARACTER   EXCELLENCE   TEAM   JOY

October 10, 2022

Paulette Taylor
555 S. Lewis Ave. Apt. B304
Tulsa, OK 74104

Dear Ms. Taylor:

Re: Suspension Review of Suspension of George Gibbs, 6/2/2008 from Booker T. Washington.

I have completed my review of George's suspension from Booker T. Washington High School. As a result of my review, I have decided to modify the suspension. George will be given the opportunity to continue school at our Alternative Suspension Program, TRAICE Academy, that will provide continued academic work and support. Ms. Renee Weygandt will contact you to discuss enrollment. Should you wish to appeal this decision, please provide written notice of your intention to appeal to the Clerk of the Board, Ms. Sarah Bozone, within 5 days of the decision.

Sincerely,

Stephanie Andrews

Executive Director of Student and Family Support Services

How can you modify without an appeal
What are you modifying? Sexual harrassment
it did not happen Ms. Andrews.

CARESSA CHATHAM
NOTARY PUBLIC - STATE OF OKLAHOMA
MY COMMISSION EXPIRES OCT. 20, 2026
COMMISSION # 22014173

Caressa Chatham

Notary 6-5-24
EXP 10/20/26
22014173

3027 SOUTH NEW HAVEN AVENUE | TULSA, OKLAHOMA 74114

Thanks so much,

## Attention:

Tulsa Public School Governing Board

**Sarah Bozone,** *Board Clerk*

3027 S. Haven Avenue, Tulsa, OK 74114

bozonsa@tulsaschools.org

Enclosed: Nine Governmental Tort Claims

---

**SENDER: COMPLETE THIS SECTION**

☐ Complete items 1, 2, and 3.
☐ Print your name and address on the reverse so that we can return the card to you.
☐ Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to: Tulsa Public Sch,
Sarah Bozone, Clerk
3027 S. New Haven Ave.
Tulsa OK 74114

9590 9402 8027 2305 1108 36

Article Number (Transfer from service label)

Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Sarah Bozone     ☐ Agent   ☐ Addressee

B. Received by (Printed Name): Sarah Bozone   C. Date of Delivery 9.5.23

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No
Governmental Tort Claims
9 in total

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

Received by: *Mekala Corrigan*, deputy clerk of board

Date: 9.7.23

Received by: P.J. 9.7.23

6-5-24

Notary *Carissa Chock*
Com # 22014173
EXP 10/20/26

┌─────────────────────────────┐
│ CARESSA CHATHAM             │
│ NOTARY PUBLIC - STATE OF OKLAHOMA │
│ MY COMMISSION EXPIRES OCT. 20, 2026 │
│ COMMISSION # 22014173       │
└─────────────────────────────┘

Exhibit 9